**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:26-cv-00323 (MSN/WBP) |
| MYAUDIIQ.COM, et al., | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATIONS**

Plaintiffs Volkswagen Group of America, Inc. ("Volkswagen") and Audi Aktiengesellschaft ("Audi AG") (collectively, "Plaintiffs") have moved for default judgment under Federal Rule 55(b) against MYAUDIIQ.com ("Defendant Domain Name") and John Does (collectively, "Defendants"). ("Motion," ECF No. 56.) Under 28 U.S.C. § 636(b)(1)(C), I recommend that the district judge GRANT the Motion for Default Judgment.

## I. Procedural Background

On February 3, 2026, Volkswagen filed a Complaint (ECF No. 1), an Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction (ECF No. 6), and a Motion for Order Authorizing Service of Process by Email (ECF No. 10). In the Complaint, Volkswagen alleges that MYAUDIIQ.com and John Does illegally used AUDI® without authorization in violation of the federal Anti-Cybersquatting Consumer Protection Act ("ACPA"). (ECF No. 1 ¶¶ 25–30.) On February 5, 2026, the district judge granted Volkswagen a 14-day temporary restraining order ("TRO") and granted it permission to serve Defendants by electronic publication. (ECF No. 16.) The district judge held a hearing on Volkswagen's motion for

preliminary injunction on February 18, 2026 (ECF No. 22) and the following day converted the TRO to a preliminary injunction (ECF No. 23).

The Clerk issued a summons for service on Defendants (ECF No. 20), and Volkswagen emailed it and the complaint to Defendants on February 11, 2026 (ECF No. 21). Thus, Federal Rule 12 requires Defendants to answer the Complaint by March 4, 2026. Fed. R. Civ. P. 12(a). Because none of Defendants answered or responded to the Complaint, Volkswagen asked the Clerk of Court to enter a default against them, which the Clerk entered on March 26, 2026. (ECF Nos. 31–32.) That same day, the district judge ordered Volkswagen to file a motion for default judgment and to notice the hearing for May 1, 2026. (ECF No. 33.) On April 25, 2026, Volkswagen complied. (ECF No. 34.)

On April 21, 2026, having reviewed the default judgment motion, the Court ordered supplemental briefing on the issue of Volkswagen's standing to bring an ACPA action despite Audi AG's status as trademark owner. (ECF No. 38.) One week later, Volkswagen filed a supplement (ECF No. 39) arguing that it had standing as an exclusive licensee under its Importer Agreement (ECF No. 41) with Audi AG. At the May 1, 2026, hearing, the Court concluded that even if exclusive licensees possess standing under the ACPA, the License Agreement does not confer exclusivity and is otherwise too attenuated to establish ownership-like rights with Volkswagen. (5/01 FTR at 10:07:40–16:55.) The Court then granted Volkswagen leave to file a motion to involuntarily join Audi AG. (*Id.* at 10:19:16–20:28.)

On May 27, 2026, Volkswagen filed a Motion to Have Audi AG Added as an Involuntary Plaintiff and to Renew Motion for Default Judgment with Supplemental Briefing Regarding Standing. (ECF No. 49.) Following a hearing on June 12, 2026, the Court added Audi AG as an involuntary Plaintiff but ordered Volkswagen to renew its Motion for Default Judgment and

serve it on Defendants. (ECF No. 55.) Volkswagen and Audi AG filed the renewed Motion and served it on Defendants on June 23, 2026. (ECF Nos. 56–60.)

The Court held a final hearing on the Motion on July 24, 2026. (ECF No. 61.) Plaintiffs' counsel appeared, but no one appeared on behalf of Defendants. (*Id.*)

## II. <u>Factual Background</u>

The Complaint (ECF No. 1), Motion (ECF No. 56), and Memorandum in Support for Default Judgment (ECF No. 57) establish these facts.

Volkswagen is a New Jersey corporation with its principal place of business in Reston, Virginia. (ECF No. 1 ¶ 8.) Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. (ECF No. 57 at 3.) Volkswagen Group owns both Plaintiffs. (*Id.*) Volkswagen is the exclusive U.S. importer of luxury vehicles Audi AG manufactures, which Volkswagen sells in the United States. (*Id.*; ECF No. 1 ¶ 8.)

Plaintiffs claim Volkswagen previously owned the domain name MYAUDIIQ.com but inadvertently allowed its registration to lapse in or around December 2025. (*Id.* ¶ 3; 7/24 FTR at 10:02:12–2:28.) Shortly thereafter, on January 15, 2026, Defendants acquired the domain and have since used it to divert consumers to a Chinese pornographic website, misappropriating the AUDI Mark and irreparably harming Plaintiffs' good will. (*Id.* ¶¶ 1, 3.) Plaintiffs allege that John Does and the registrants of Defendant Domain Name are unknown because they have concealed their identities and contact information. (*Id.* ¶ 9.)

## III. <u>Proposed Findings of Fact and Recommendations</u>

### A. <u>Jurisdiction and Venue</u>

The Court must establish both subject matter jurisdiction over this action and personal jurisdiction over these parties before default judgment.

As for subject matter jurisdiction, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction over any civil action arising under any Act of Congress relating . . . to trademarks," 28 U.S.C. § 1338(a). District courts also have jurisdiction over all federal trademark actions. *See* 15 U.S.C. § 1121(a). Here, the Complaint alleges violations of the ACPA based on the AUDI Mark. Thus, this Court has subject matter jurisdiction over this matter under 28 United States Code sections 1331 and 1338(a) and 15 United States Code section 1121(a).

The Court may exercise personal jurisdiction over Defendant Domain Name because the ACPA confers *in rem* jurisdiction. Federal trademark law provides that "[t]he owner of a mark may file an *in rem* civil action against a domain name in the judicial district in which the . . . domain name registry . . . is located if . . . the court finds that the owner . . . is not able to obtain *in personam* jurisdiction over a person who [otherwise] would have been a defendant in a civil action . . ." or "through due diligence was not able to find a person who would have been a defendant . . . ." 15 U.S.C. § 1125(d)(2)(A). Plaintiffs satisfy the first prong. They cannot obtain *in personam* jurisdiction over the Domain Name registrants, whose identities are concealed, who have identified themselves as outside the United States and therefore not subject to personal jurisdiction, and whose domain name registry, VeriSign, Inc. ("Domain Registry"), is located within this judicial district. (ECF No. 57 at 6–7.) Plaintiffs also satisfy the second prong. Despite due diligence, they could not locate the registrants who provided no or false Whois contact information to their registrar and employed Gname 250 Inc. to conceal their identities. (ECF No. 1 at 1, 4.)

Venue is proper because the Domain Registry is situated in this judicial district, 15 U.S.C. § 1125(d)(2)(C).

**B. <u>Service</u>**

Before entering default judgment, a court must determine that the plaintiff properly served the defaulting party. To serve a domain name in an *in rem* action, a plaintiff must comply with the ACPA by: (1) sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant at the postal and e-mail address provided by the registrant to the registrar; and (2) publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(A)–(B).

On February 3, 2026, Volkswagen filed a Motion for Order Authorizing Service of Process by Email seeking permission to serve Defendants by electronic means. (ECF No. 10.) Two days later, the Court granted that motion and required Volkswagen to publish the Court's Order in *The Washington Post* or *The Washington Times* and to send the Order through email and through the link associated with Defendant Domain Name on Whois, which it did on February 9 and 13, 2026, respectively. (ECF Nos. 16, 17; ECF No. 21 at 9.)

On February 11, 2026, on Volkswagen's request, the Clerk issued a summons (ECF Nos. 19–20), and Volkswagen served it and the complaint on Defendants by sending copies to <myaudiiq.com> and to the registrants' privacy service at <complaint@gname.com> and <legal@gname.com>. (ECF No. 21.) According to the Certificate of Service, all of Volkswagen's emails to the above-mentioned addresses were delivered successfully, and <legal@gname.com> replied, stating that it forwarded the summons and complaint to the registrants. (*Id.*) Volkswagen also complied with the Court's Order by publishing a copy of it in *The Washington Times*. (*Id.* at 9.)

Therefore, Plaintiffs properly served Defendants.

### C. Grounds for Entry of Default

Rule 55(a) of the Federal Rules of Civil Procedure directs the clerk to enter default when, upon a party's request, "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." As noted above, the Domain Name's answer was due by March 4, 2026, but the Domain Name never filed a responsive pleading, so the Clerk entered a default on March 26, 2026. (ECF No. 32.)

Accordingly, the Clerk properly entered default as to Defendant Domain Name.

### D. Liability under the ACPA

Because the Clerk has entered default against the Domain Name, the Complaint's factual allegations are admitted, and the Court must determine whether they state a claim. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than on relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Default does not, however, establish the amount of damages. *See* Fed. R. Civ. P. 55(b)(2) (allowing the court to determine damages, take evidence on any allegation, or investigate any other matter necessary to enter or carry out judgment).

A default judgment also "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As relief, Plaintiffs ask the Court in Volkswagen's Complaint to change the registrar of record for MYAUDIIQ.com to Volkswagen's registrar of choice, change the registrant of MYAUDIIQ.com to Volkswagen, for $100,000 in statutory damages and attorney's fees and costs, and to permanently enjoin John

Does from maintaining or owning domain names that would violate the AUDI Mark. (ECF No. 1 ¶¶ A–F.)

Plaintiffs allege that the registrants of Defendant Domain Name have committed unlawful cyberpiracy in violation of the ACPA. (ECF No. 1 ¶¶ 17–24.) To state a claim under the ACPA, Plaintiffs must prove that the registrants of Defendant Domain Name (1) had a bad-faith intent to profit from using the distinctive mark; *and* (2) registered, trafficked in, or used a domain name that (a) is identical or confusingly similar to the distinctive mark; (b) in the case of a famous mark, is identical, confusingly similar to, or dilutive of the distinctive mark; or (c) is a protective trademark, word, or name. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).

1. <u>The AUDI Mark is Distinctive</u>

Registering a mark on the United States Patent and Trademark Office's Principal Register is *prima facie* evidence that a mark is distinct and has obtained a secondary meaning. *See Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Secondary meaning is also supported by "extensive advertising expenditures, sales, successes, attempts to plagiarize [the] mark, and where [the] mark has been used exclusively for an extended period of time." *Cent. Source LLC v. annualdcreditreport.com*, No. 1:14-cv-304-LOG, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014).

Here, Audi AG holds a federal registration for the AUDI Mark and multiple derivative registrations.[1] (*See* ECF No. 1 ¶ 1.) Volkswagen and Audi AG have extensively used AUDI® in commerce to sell luxury vehicles in the United States and across the globe. (*Id.* ¶ 18.) Plaintiffs

[1] *Trademark Search*, USPTO, https://tmsearch.uspto.gov/search/ [https://perma.cc/232Z-QN5G] (last visited Apr. 17, 2026).

have "spent hundreds of millions of dollars" in advertising, promoting, enforcing, and developing AUDI® as a symbol of high-quality automotive goods and services since at least the 1930s, thereby establishing goodwill and global recognition of the mark. (*Id.*; ECF No. 57 at 3; 7/24 FTR at 10:02:30–2:50.) Federal courts have also repeatedly held that "Audi's trademarks are world-famous" and have consistently maintained their distinctiveness. *Audi AG v. D'Amato*, 469 F.3d 534, 543 (6th Cir. 2006); *see, e.g.*, *Volkswagen Grp. of Am., Inc. v. Accesaudi.com*, No. 1:23-cv-849-TSE-WEF, 2023 WL 9291988, at *6 (E.D. Va. Nov. 29, 2023); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1064, 1072 (9th Cir. 2006); *Audi AG. v. Posh Clothing*, No. 18-14254, 2019 WL 1951166, at *4 (D.N.J. May 2, 2019).

I therefore recommend a finding that the AUDI Mark is distinctive.

2. <u>The Registrants Acted in Bad Faith</u>

The ACPA sets out nine factors for determining whether a domain name registrant has acted in bad faith: (1) whether the registrant has trademark or other intellectual property rights in the domain name; (2) the extent to which the domain name consists of the legal name of the registrant; (3) the registrant's prior use, if any, of the domain name in connection with the *bona fide* offering of goods and services; (4) the registrant's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name; (5) the registrant's intent to divert consumers from the mark owner's website in a way that could harm the goodwill of the mark; (6) whether the registrant offered to transfer, sell, or otherwise assign the domain name to the mark owner for financial gain without having used the domain name; (7) whether the registrant used materially misleading contact information when applying for the domain name; (8) whether the registrant registered multiple domain names that he knows are identical or confusingly

similar to the distinctive marks of others; and (9) the extent to which the incorporated mark is or is not distinctive and famous. *See* 15 U.S.C. § 1125(d)(1)(B)(i).

The registrant need not satisfy every factor, and the court may consider additional relevant circumstances. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001); 15 U.S.C. § 1125(d)(1)(B)(i). These factors "attempt to balance the property interests of trademark owners with the legitimate interests of Internet users . . . including for purposes such as comparative advertising, comment, criticism, parody, news, reporting, [and] fair use." *Lamparello v. Falwell*, 420 F.3d 309, 319 (4th Cir. 2005).

Plaintiffs have shown that the registrants acted in bad faith. First, Audi AG owns the Audi Mark, and Defendant Domain Name does not reflect the registrants' intellectual property rights or legal names (ECF No. 57 at 11). *See, e.g.*, *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 465–66 (E.D. Mich. 2000) (finding that although "Ford" is a common name, it is not the *registrant's* first or last name). The registrants have not engaged in a *bona fide* noncommercial or fair use, have used a privacy service to hide their identities, and have provided no or false Whois contact information to evade accountability. (ECF No. 57 at 12.)

Plaintiffs have established that the registrants intended to harm the mark's goodwill. Congress enacted the ACPA to halt registrants' use of "well-known marks to prey on consumer confusion by misusing the domain name to divert customers . . . to . . . pornography sites," S. Rep. No. 106-140, at 6 (1999), because pornography is substantially likely to tarnish the goodwill or reputation of a plaintiff's mark or to otherwise cause a loss of sales. *E.g.*, *Invista N. Am. S.A.R.L. v. Lycracameltoe.com*, No. 1:10-cv-1346-TCB, 2011 WL 13234016, at *4 (E.D. Va. Aug. 24, 2011); *Mattel, Inc. v. Internet Dimensions Inc.*, No. 99 Civ. 10066-HB, 2000 WL 973745, at *5 (S.D.N.Y. July 13, 2000). Cybersquatters host pornography sites because they

derive "advertising revenue based on the number of visits, or 'hits,' the site receives." S. Rep. No. 106-140, at 6 (1999). First, the registrants meant to disparage Plaintiffs by associating the Audi Mark with pornographic materials wholly unrelated to automotive goods and services. Second, because Volkswagen was the Domain Name's previous registrant and hosted a legitimate website for Audi owners to learn about maintenance, warning lights, and specialty features (ECF No. 1 ¶¶ 3, 19), the registrants are attempting to trade on Volkswagen's legitimate website traffic by diverting Audi customers to pornographic sites. *See generally Ultrapure Sys., Inc. v. Ham-Let Grp*., 921 F. Supp. 659, 664 (N.D. Cal. 1996) (finding that because defendant formerly sold the legitimate trademark products, using a similar mark for like products demonstrated intent to confuse buyers).

Accordingly, the registrants acted in bad faith under the ACPA.

3. Defendant Domain Name is Confusingly Similar to AUDI®

A domain name is likely to cause confusion among the public when "dominant or salient portions" of the domain name are identical to a protected mark. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Differences in collateral portions of the mark do not defeat confusion. *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008). But if added words or letters "clearly distinguish it from the plaintiff's usage," courts will not consider the use confusingly similar. *Ford Motor Co. v. Greatdomains.com, Inc*., 177 F. Supp. 2d 635, 642 & n.3 (E.D. Mich. 2001) (finding that no reasonable person could conclude that the Ford Motor Company used or approved the domain name fordstheater.org, a popular D.C. landmark).

Comparing the Audi Mark with the Defendant Domain Name makes the confusion plain. The domain <myaudiiq.com> incorporates the Audi Mark in its entirety, differing from the mark only by adding the generic words "my" and "iq." *See Audi AG v. D'Amato*, 381 F. Supp. 2d 644,

660–61 (E.D. Mich. 2005). Those minor additions do not distinguish the domain and instead exacerbate the confusion because Volkswagen was the previous registrant; consumers therefore reasonably understand the Domain Name to refer specifically to Audi vehicle products and services. *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 177 F. Supp. 2d 506, 519 (E.D. Va. 2001). Further, no wider context exists indicating that MYAUDIIQ.com hosts an adult entertainment site.

I therefore recommend a finding that Defendant Domain Name is confusingly similar to the AUDI Mark.

Accordingly, because AUDI® is distinctive, because the registrants registered Defendant Domain Name in bad faith, and because Defendant Domain Name is confusingly similar to the AUDI Mark, I recommend a finding that the registrants violated the ACPA.

**E. <u>Relief</u>**

**1. Transfer of the Defendant Domain Name**

Plaintiffs ask the Court to transfer the Defendant Domain Name to Volkswagen. (ECF No. 57 at 12–13.) "The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner." *Cent. Source LLC*, 2014 WL 3811162, at *8; 15 U.S.C. § 1125(d)(1)(C); *see, e.g.*, *Volkswagen, AG v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 885 (E.D. Va. 2008). Courts have also ordered a transfer when those domain names infringe on valid trademarks. *E.g.*, *Cap. One Fin. Corp. v. Velocity-Black.com*, No. 1:23-cv-00861-IDD, 2024 WL 1600673, at *8 (E.D. Va. Jan. 31, 2024) (quoting 15 U.S.C. § 1125(d)(1)(C)).

VeriSign, Inc. maintains the Defendant Domain Name and resides in this judicial district. (ECF No. 1 ¶ 11.) Therefore, because Plaintiffs have established a violation of the ACPA, I

recommend that the district judge order VeriSign, Inc. to change the registrar of record for the Defendant Domain Name to Plaintiffs' registrar of choice, GoDaddy, Inc., and that GoDaddy, Inc. change the registrant of the Defendant Domain Name to Volkswagen.

### 2. Statutory Damages, Attorney's Fees, Costs, Injunctive Relief

Although Plaintiffs requested $100,000 in statutory damages, attorney's fees, and costs as well as injunctive relief in the Complaint, they abandoned that request in the Motion (ECF No. 1 at 9; ECF No. 57 at 12–13). *See Limewr Fyre OU v. Fyrefestival.com*, No. 1:25-cv-1629-WEF, 2026 WL 904778, at *9 n.11 (E.D. Va. Mar. 11, 2026); *Zeng v. Do*e, No. 1:22-cv-00028-IDD, 2022 WL 7768118, at *1 n.1 (E.D. Va. Aug. 30, 2022). Because the Court cannot obtain in personam jurisdiction over the registrants, the ACPA limits *in rem* remedies to transfer, cancellation, or forfeiture of the domain name. 15 U.S.C. § 1125(d)(2)(D)(i).

I therefore recommend that the district judge not award Plaintiffs damages, attorney's fees, costs, or an injunction against John Does.

## IV. <u>Recommendation</u>

For these reasons, I recommend that the district judge enter a default judgment in favor of Volkswagen and Audi AG and against Defendant Domain Name. I further recommend that the district judge direct VeriSign, Inc. to change the registrar of record for the Defendant Domain Name to Plaintiffs' registrar of choice, GoDaddy, Inc., and that GoDaddy, Inc. change the registrant of the Defendant Domain Name to Volkswagen Group of America.

## V. <u>Notice</u>

The Court will serve this Report and Recommendations on all parties through its electronic filing system. Plaintiffs must also send a copy to Defendants in the same manner they

served Defendants (ECF No. 21 at 1) and must certify the same to the Court within three days of service.

Objections to this Report and Recommendations must be filed within 14 days of service. Failure to file timely objections waives appellate review of both the substance of this Report and Recommendations and any judgment entered on it. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985).

Entered this 24 day of July 2026.

William B. Porter
United States Magistrate Judge

Alexandria, Virginia